46 F.3d 1122
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Alan B. ALBRIGHT; Penny Albright, Plaintiffs-Appellants,
v.
STATE FARM FIRE AND CASUALTY COMPANY, Defendant-Appellee.
 No. 94-1320.
 United States Court of Appeals, Fourth Circuit.
 Argued Sept. 29, 1994.
Decided Jan. 18, 1995.
 
 Appeal from the United States District Court for the District of South Carolina, at Columbia. Joseph F. Anderson, Jr., District Judge. (CA-93-1081)
 D.S.C.
 AFFIRMED.
 ARGUED: Irene Rose Duggan, NEXSEN, PRUET, JACOBS & POLLARD, Columbia, SC, for Appellants.
 Jeter E. Rhodes, Jr., McCUTCHEN, BLANTON, RHODES & JOHNSON, Columbia, SC, for Appellee.
 ON BRIEF: T. Eugene Allen, III, Victoria L. Eslinger, Susan Batten Lipscomb, NEXSEN, PRUET, JACOBS & POLLARD, Columbia, SC, for Appellants.
 John C. Bradley, Jr., McCUTCHEN, BLANTON, RHODES & JOHNSON, Columbia, SC, for Appellee.
 Before MICHAEL and MOTZ, Circuit Judges, and MICHAEL, United States District Judge for the Western District of Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 The Albrights appeal from the entry of summary judgment in favor of State Farm Fire & Casualty Company ("State Farm"). Finding that the Albrights' claims fall within the "business pursuits" and "business operations" exclusions to the applicable insurance policies, we affirm.
 
 
 2
 Plaintiff Alan B. Albright ("Albright") served as head of the Underwater Division and Senior Underwater Archaeologist of the South Carolina Institute of Anthropology and Archaeology ("SCIAA"). Bruce E. Rippeteau ("Rippeteau") was the Director of SCIAA, which is overseen by the University of South Carolina ("USC"). In 1986, another Underwater Division employee, Gary Brewer ("Brewer"), complained to Albright that Albright had failed to attribute to Brewer several paragraphs contained in an article written by Albright. The article still was in the draft stage at that time, and Albright corrected the problem to Brewer's satisfaction. Subsequently, however, Brewer notified Rippeteau about the incident, and Rippeteau formed a committee to investigate the matter. Although Brewer had not accused Albright of plagiarism, Rippeteau constantly referred to the incident as the "Albright plagiarism matter."
 
 
 3
 On September 3, 1986, the committee reported that it had found that Albright was not guilty of plagiarism. According to Albright, Rippeteau never informed him of the committee's exculpatory conclusions. Instead, Rippeteau conducted his own investigation, after which he concluded that although no "intentional plagiarism" had occurred, Albright was guilty of "unintentional plagiarism." On October 22, 1986, Rippeteau reported this finding to his superiors and after informing Albright, he placed a letter of reprimand in Albright's personnel file. The record does not disclose whether Rippeteau reported the committee's findings to his superiors.
 
 
 4
 A few months before the "Albright plagiarism matter," Rippeteau conducted his annual review of Albright for the year 1985-86. The review bitterly criticized Albright's performance and attacked his personality and character. Rippeteau then supplemented this review on September 30, 1986 with accusations of plagiarism and general incompetence. Outside of the scope of this specific review and its supplement, Rippeteau falsely accused Albright of being a homosexual, both by innuendo and by direct statements circulated to third persons in the USC community.
 
 
 5
 Albright claims that he experienced tremendous physical and emotional injury as a result of Rippeteau's behavior. He suffered multiple small strokes allegedly exacerbated by the severe strain of dealing with Rippeteau's accusations. Albright also claims to have developed abdominal pain, bowel dysfunction, chronic fatigue, sleep disturbance, dizziness, headaches, and frequent chest pains. As a result, Albright terminated his employment with SCIAA.
 
 
 6
 Albright and his wife, Penny Albright, brought an action against USC, SCIAA, and Rippeteau in South Carolina state court. The complaint stated counts of slander, libel, outrage, invasion of privacy, and loss of consortium.[1] Rippeteau notified his general liability insurer, State Farm, requesting that it defend him in the action brought by the Albrights. Rippeteau was insured under two State Farm policies--a Homeowners Extra Policy (the "homeowners policy"), and a Personal Liability Umbrella Policy (the "umbrella policy"). State Farm, however, refused to defend Rippeteau, claiming that neither policy provided coverage for Rippeteau's actions. Subsequently, Rippeteau agreed to confess judgment in the amount of $700,000 and the Albrights agreed not to attempt to satisfy the judgment against any of Rippeteau's assets other than the two State Farm insurance policies. Pursuant to this agreement, Rippeteau assigned to the Albrights the right to assert a claim under the State Farm policies based on the confessed judgment.[2]
 
 
 7
 The Albrights brought this action against State Farm in South Carolina state court on April 17, 1993, seeking to recover from State Farm under the insurance contracts as Rippeteau's assignees. State Farm removed the action to the United States District Court for the District of South Carolina and filed an answer asserting several defenses. Both parties filed motions for summary judgment, and after hearing oral arguments, the district court granted State Farm's motion and denied the Albrights' motion. The district court based its decision upon its conclusion that Rippeteau's actions fell within the "business pursuits" and "business operations" exclusions to the insurance policies. The Albrights appeal the district court's disposition of both motions.
 
 
 8
 We agree with the district court that neither the homeowners policy nor the umbrella policy cover Rippeteau's actions. The homeowners policy excludes from coverage "bodily injury or property damages arising out of business pursuits of any insured.... This exclusion does not apply: (1) to activities which are ordinarily incident to nonbusiness pursuits...."[3] The umbrella policy precludes coverage "for a loss caused by your business operations unless underlying insurance listed on the Declarations Page provides coverage for the loss." Both policies define "business" as "a trade, profession, or occupation." No South Carolina opinion has been found which has interpreted the "business pursuits" or "business operations" exclusions in these policies.
 
 
 9
 Although not precisely on point, South Carolina State Budget & Control Bd. v. Prince, 403 S.E.2d 643 (S.C.1991), provides substantial guidance. Prince involved the interpretation of an insurance policy providing coverage to an employee "acting in the course ... of employment." The court held that the policy provided coverage for defamatory statements made at a press conference by a school board member alleging "an apparent pattern of malfeasance, fraud, mismanagement [of district funds], illegal bid-solicitation practices, kickbacks, and bribery" within the school board. See id. at 645. Borrowing from general master/servant liability and workers' compensation principles, the court stated that the insurance policy provides coverage "if the employee is engaged in a pursuit or undertaking consistent with his contract of hire and which in some logical manner pertains to or is incidental to his employment." Id. at 646 (quoting Beam v. State Workmen's Compensation Fund, 200 S.E.2d 83, 86 (S.C.1973)). Although Prince was acting without the authority of the school board, the court stated that "his activities were not wholly disconnected from the business of the School District such that he was acting outside the scope of his employment." Id. at 647.
 
 
 10
 We believe that Prince provides a sound indication of how the South Carolina Supreme Court would rule in this case. Although Prince did not interpret the same language at issue in this case, it provides valuable insight into what the South Carolina Supreme Court regards as an appropriate standard for determining whether an incident is related more to business than to personal pursuits. All of Rippeteau's actions "in some logical manner pertain[ ] to or [are] incident to his employment." They were done incident to Rippeteau's business-related duties as Albright's superior. The allegations of plagiarism, incompetence, poor performance, bad character, and homosexuality were made in what Albright asserts was a one-man campaign by Rippeteau to drive him from his employment. All of these negative charges either were contained in Rippeteau's annual review of Albright or were spread to other members of the USC community, Albright's place of employment. Comments concerning Albright's job performance certainly "in some logical manner pertain[ ] to or [are] incident to" Rippeteau's employment duties as Albright's supervisor.
 
 
 11
 The only statements which give reason to pause are the allegations of homosexuality. Unlike all of Rippeteau's other allegations, whether Albright is a homosexual is unrelated to his job performance. Notwithstanding, Rippeteau alleged that Albright is a homosexual for business-related purposes. What is important is his apparent belief that the allegation would in some negative way affect Albright's job performance and job standing. The comments were made to third parties in the USC community seemingly with the intention of affecting Albright's employment position. Even if Rippeteau is wrong in believing that homosexuality is related to Albright's job performance, that is precisely the context in which Rippeteau made the statements.[4] In Prince, the court held that defamatory statements made at a press conference "in some logical manner pertain[ ] to or [are] incident to" employment because the speaker's "concerns specifically stemmed from his [employment] position." Id. at 646. Likewise, Rippeteau's statements about Albright's sexuality were "concerns" which "specifically stemmed from [Rippeteau's employment] position." His statements about Albright's sexuality, apparently made with the expectation that they would affect Albright's employment, "were not wholly disconnected from the business of the [SCIAA] such that he was acting outside the scope of his employment." See id. at 647. As a result, all of Rippeteau's actions arise out of his "business pursuits" and "business operations."
 
 
 12
 We find it unnecessary to usurp South Carolina's prerogative to define precisely the scope of "business pursuits" or "business operations" as used in the State Farm policies; rather, it is sufficient to conclude that Rippeteau's actions fall within their reach. Guided by Prince, we believe that the South Carolina Supreme Court would hold that these exclusions in the homeowners policy and the umbrella policy preclude coverage for Rippeteau's actions. As a result, the district court was correct in granting State Farm's motion for summary judgment and denying the Albrights' motion for summary judgment.
 
 AFFIRMED
 
 
 [1]
 The Albrights settled with USC and SCIAA for $500,000
 
 
 [2]
 In the Confession of Judgment, Rippeteau stated that his conduct "was outside the course and scope of [his] employment." Because of the potential for fraud inherent in such a confession and the purpose for which Rippeteau executed this document, the court places very little weight on this statement in determining whether Rippeteau's conduct truly was within the "business pursuits" and "business operations" exclusions
 
 
 [3]
 The homeowners policy defines bodily injury to include "bodily harm, sickness or disease. This includes required care, loss of services and death resulting therefrom." State Farm asserts that the Albrights' claims do not fall within this definition and, therefore, are not covered by the policy. Though we may assume, without deciding, that the Albrights' claims, or certain of them, fall within the coverage of the homeowners policy, our conclusion concerning the business exclusions in the policies makes it unnecessary to decide this issue
 
 
 [4]
 Although not relied upon explicitly in the lower court's decision, it is interesting to note that the Complaint in this case states that Rippeteau accused the plaintiff of homosexual activity in connection with the investigation into the plagiarism charges. Given such a statement, the Albrights apparently concede that Rippeteau made the statements about Albright's sexuality for the purpose of affecting such events