528 S.E.2d 670

Isiah Rudy LOADHOLT, in his capacity as Sheriff
of Hampton County, Respondent,

v.

SOUTH CAROLINA STATE BUDGET AND CONTROL
BOARD, DIVISION OF GENERAL SERVICES,
INSURANCE RESERVE FUND, Appellant,

v.

Sherry Capers, Tounda Taylor, and
Kim Davenport, Respondents.

No. 3116.

Court of Appeals of South Carolina.

Heard Sept. 9, 1999.
Decided Feb. 14, 2000.
Rehearing Denied May 19, 2000.

Andrew F. Lindemann and William H. Davidson, II, both of Davidson, Morrison & Lindemann, of Columbia, for appellant.

I.S. Leevy Johnson and William T. Toal, both of Johnson, Toal & Battiste, of Columbia; and Joel D. Bailey, of Beaufort, for respondents.

HOWARD, Judge:

This declaratory judgment action involves interpretation of a general tort liability policy issued by the Insurance Reserve Fund to Hampton County. The circuit court found the policy covered sexual misconduct and related offenses allegedly committed by Isiah Rudy Loadholt against three employees while he was Sheriff of Hampton County. We reverse.

## FACTS/PROCEDURAL BACKGROUND

Sherry Capers, Tounda Taylor, and Kim Davenport (collectively "Respondents") filed three separate actions in the United States District Court against Hampton County and Sheriff Loadholt. They alleged Loadholt had committed acts of sexual misconduct while they were employees of Hampton County. Capers and Taylor worked as dispatchers and jailers for Hampton County. Davenport was a secretary at the Sheriff's Department and the jail. Respondents alleged that, in each of the instances, Loadholt summoned them to his office on the pretext of discussing jail or sheriff's department business. Once in his office, Loadholt would lock the door and then ask them questions regarding their sexual histories and sexually molest or assault them. Capers and Davenport resigned their positions after the alleged incidents. Taylor was terminated by Loadholt.

In their complaints, each of the Respondents described multiple incidents and alleged causes of action for (1) sexual harassment, (2) violations of constitutional rights (specifically, a violation of the Equal Protection Clause of the Fourteenth Amendment), (3) intentional infliction of emotional distress, (4) assault, (5) battery, (6) false imprisonment, and (7) invasion of privacy. Taylor also alleged a cause of action for retaliatory discharge. She asserted Loadholt fired her in retaliation for filing a complaint with the South Carolina Human Affairs Commission and for signing warrants charging Loadholt with criminal sexual conduct and assault and battery of a high and aggravated nature.

Appellant, the Insurance Reserve Fund (the Fund), issued a general tort liability policy to the named insured, Hampton County. Loadholt, as the Sheriff of Hampton County, was included under the policy as a member of law enforcement.

The Fund refused to provide coverage to Loadholt or defend him in the underlying actions, asserting coverage only applies to an insured while "acting in the scope of his or her official duties." Loadholt failed to answer the three complaints and the district court entered default judgments against him on the issue of liability. The only remaining issue for trial was damages. In an apparent effort to mitigate damages, Loadholt executed confessions of judgment to the Respondents for $250,000 each. Prior to confessing judgment, Loadholt sought a defense from the Fund, which the Fund refused.

Loadholt subsequently brought this declaratory judgment action in the circuit court against the Fund to determine whether the policy issued by the Fund to Hampton County provides coverage for the damages alleged by the Respondents in their federal actions. The Fund filed a counterclaim and a third-party complaint against the Respondents to determine their interests in the action. The Fund sought a declaratory judgment to the effect that it does not have a duty to defend or indemnify Loadholt under the general tort liability policy.

Respondents and the Fund moved for summary judgment. At the hearing, Loadholt supported Respondents' motion for summary judgment. The circuit court ruled Loadholt was entitled to coverage under the policy for the claims made by the Respondents. The circuit court ordered the Fund to pay $250,000 to each of the Respondents, as well as interest at a rate of 14% per year, in accordance with the confessed judgments. The court amended its order on a motion for reconsideration by the Fund, but did not change its substantive effect. The Fund appeals, raising numerous issues challenging the order of the circuit court.

## STANDARD OF REVIEW

■ "It is generally held that the jurisdiction to render a declaratory judgment is discretionary, and should be exercised

with great care, and with due regard to all the circumstances of the case." *Southern Ry. Co. v. Order of Ry. Conductors of America,* 210 S.C. 121, 134, 41 S.E.2d 774, 779 (1947).

A suit for declaratory judgment is neither legal nor equitable, but is determined by the nature of the underlying issues. *Felts v. Richland County,* 303 S.C. 354, 400 S.E.2d 781 (1991). If an action is at law, it retains this character, and the Court of Appeals must affirm where there is any evidence to support the judge's findings. *Id.* A declaratory judgment action to interpret an insurance contract is an action at law. *Cobb v. Benjamin,* 325 S.C. 573, 482 S.E.2d 589 (Ct.App.1997).

A trial court may properly grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP. *See also Tupper v. Dorchester County,* 326 S.C. 318, 487 S.E.2d 187 (1997).

In determining whether any triable issues of fact exist, the evidence and all reasonable inferences therefrom must be viewed in the light most favorable to the non-moving party. *Summer v. Carpenter,* 328 S.C. 36, 492 S.E.2d 55 (1997); *City of Columbia v. American Civil Liberties Union,* 323 S.C. 384, 475 S.E.2d 747 (1996).

### DISCUSSION

The Fund argues Loadholt was not an insured under the general tort liability policy because he was not "acting within the scope of his official duties." We agree.

Under the policy, the Fund agreed to pay on behalf of the "insured" all sums which the insured shall become legally obligated to pay as damages because of personal injury or property damages.

"Insured" is defined as "any person, entity or organization qualifying as an insured in the 'Persons Insured' provision."

Section IV. PERSONS INSURED, prior to January 1, 1991, defined an "insured" as follows:

(b) Any employee of the entity designated in the declarations as "named insured" is an insured, but only while the employee is acting in the course of his or her employment.

Effective January 1, 1991, an endorsement changed this definition to:

(b) Any employee of the entity designated in the declarations as "named insured" is an insured, but only while the employee is acting in the *scope* of his or her *official duties.*[1]

The Fund changed its definition of an "insured" in response to *South Carolina State Budget and Control Board v. Prince,* 304 S.C. 241, 403 S.E.2d 643 (1991). In *Prince,* the court held that the chairman of a school board's finance committee was "acting in the course of employment" when he called a press conference to voice his concerns about the school board chairman's fiscal management of the school district, so that he was an insured under the liability policy issued to the school board. The court held that "acting in the course of employment" was broader than the phrase "acting in the scope of official duty." The court found there was an ambiguity in the policy because it purported to provide coverage for certain intentional torts under the policy's definition of covered "personal injuries," which specifically included coverage for defamation, yet also purported to deny coverage for injuries expected or intended by the insured under the policy's definition of "occurrence."

In response to *Prince* 's assertion that the "scope of employment" was a broader concept than "scope of official duties," the Fund changed its definition of "insured" in the policy, effective January 1, 1991, so as to provide coverage only for acts committed "while the employee is acting in the scope of his or her official duties."

In *Doe v. South Carolina Budget and Control Board,* 329 S.C. 214, 494 S.E.2d 469 (Ct.App.1997), *aff'd* 337 S.C. 294, 523 S.E.2d 457 (1999), this Court analyzed the definition of "in-

---

1. The allegations of Taylor and Davenport all occurred after January 1, 1991. The allegations of Capers occurred from June 1989 to August 1993. Prior to January 1, 1991, the Fund's policy was a claims-made policy. In 1991, it was converted into an occurrence policy. Because Capers did not report her claim prior to January 1, 1991, her claims must be assessed based upon the policy in effect when her claim was reported, "namely in 1993 or 1994."

sured" currently used by the Fund in its general tort liability policy: an insured is an employee "acting in the scope of his or her official duties." In *Doe*, two women alleged a police officer, Roberson, sexually assaulted them. Roberson preceded each assault by stopping the victims' vehicles for DUI investigations. He coerced the victims to meet with him nearby, where he had sex with them in exchange for not arresting them on a DUI charge. The victims sued and the Fund refused to defend or indemnify the defendants.

The *Doe* court held the Fund was not required to defend or indemnify the defendants under its general tort liability policy. The Court noted the policy expressly limited an "insured" to an employee acting in the scope of his official duties. The Court held a police officer's duties do not include all conduct that the officer might engage in while on duty, citing *South Carolina Medical Malpractice Liability Insurance Joint Underwriting Ass'n v. Ferry*, 291 S.C. 460, 463, 354 S.E.2d 378, 381 (1987) (scope of professional services does not include all forms of conduct engaged in by members of a profession).

The *Doe* court further observed that S.C.Code Ann. § 1–11–140(A) (Supp.1998) provides that tort liability coverage protects government employees "against tort liability arising in the course of employment." The Court also noted that our supreme court stated in *Prince* that "course of employment" requires some act in furtherance of the employer's business. The Court concluded, "[N]o cogent argument can be made that Roberson was furthering the business of his employer at the time he sexually assaulted Appellants." *Doe*, 329 S.C. at 220, 494 S.E.2d at 473.

■ In this appeal, although Loadholt required Respondents to report to his office to discuss county business, his subsequent alleged sexual assaults on Respondents clearly exceeded the scope of his official duties as Sheriff of Hampton County, just as the offending conduct of the police officer did in *Doe*. This is an express limitation of the Fund's policy definition of "persons insured." Although Loadholt was on duty as sheriff, working in his county office and allegedly "discussing county business" prior to and at the time of the alleged assaults, his duties as sheriff did not encompass all conduct in which he engaged in while on duty. Similarly,

Loadholt's alleged sexual assaults were outside the "course of employment" under S.C.Code Ann. § 1–11–140(A) as Loadholt was not furthering the business of his employer at the time of the alleged assaults. *See Doe,* 329 S.C. at 220, 494 S.E.2d at 473.

In addition to the claims addressed above, respondent Taylor alleged Loadholt fired her in retaliation for filing a complaint against him with the South Carolina Human Affairs Commission and for signing warrants charging him with criminal sexual conduct and assault and battery of a high and aggravated nature. The hiring and firing of employees clearly falls within the scope of Loadholt's official duties as Sheriff of Hampton County. Since Loadholt's firing of Taylor falls within the scope of his official duties, making him an "insured" under the general liability policy, we must inquire whether the firing of Taylor is covered as a "personal injury" under the policy's definitions. The term "personal injury" is defined in two ways as follows:

*"Personal Injury"* means

(1) bodily injury caused by an occurrence.

(2) injury arising out of one or more of the following offenses committed during the policy period:

    (a) false arrest, detention, imprisonment, malicious prosecution, or humiliation;

    (b) wrongful entry or eviction or other invasion of the right of private occupancy;

    (c) a publication or utterance of a libel or slander or other defamatory or disparaging material;

    (d) assault and battery not committed by or at the direction of the insured unless committed for the purpose of protecting persons or property;

    (e) discrimination on the basis of race, sex, age, religion, or handicap;

    (f) denial of due process as guaranteed by the Fifth and Fourteenth Amendments to the Constitution of the United States.

    (g) violation of the following Amendments to the Constitution of the United States:

First Amendment
Fourth Amendment
Eighth Amendment

Taylor's claim of retaliatory discharge clearly is not a "bodily injury caused by an occurrence." Taylor's claim is also not viable under the enumerated offenses in subpart two of the "personal injury" section. Even though Loadholt is an "insured" for the purposes of Taylor's retaliatory discharge claim, the claim itself is not covered under the Fund's general tort liability policy.

Because we find Loadholt is not an "insured" under the Fund's general tort liability policy for the claims of sexual harassment, violation of the Equal Protection Clause of the Fourteenth Amendment, intentional infliction of emotional distress, assault, battery, false imprisonment, and invasion of privacy and that retaliatory discharged is not covered as a "personal injury," we need not address the Fund's other issues on appeal.

**REVERSED.**

HEARN and ANDERSON, JJ., concur.