531 S.E.2d 305

Thaje PADGETT, Appellant,

v.

SOUTH CAROLINA INSURANCE RESERVE
FUND and Thomas Wilson, Defendants.

of whom South Carolina Insurance
Reserve Fund, is Respondent.

No. 3166.

Court of Appeals of South Carolina.

Heard Sept. 8, 1999.
Decided May 22, 2000.
Rehearing Denied July 8, 2000.

John A. O'Leary, of O'Leary Associates; and Laura P. Valtorta, both of Columbia, for appellants.

Andrew F. Lindemann and David L. Morrison, both of Davidson, Morrison & Lindemann, of Columbia, for respondent.

PER CURIAM:

In this declaratory judgment action, Thaje Padgett, a student at South Carolina State University, sought to determine whether a South Carolina Insurance Reserve Fund (IRF) policy covered sexual harassment and an assault committed against her by Thomas Wilson, a professor and department chair at the university. Both parties moved for summary judgment. The trial court denied Padgett's motion and granted the IRF's motion for summary judgement. Padgett appeals. We affirm.

### *Facts*

On September 18, 1992, Wilson approached one of his students to engage in a conversation. Padgett was standing beside Wilson's student. Padgett alleged that Wilson "approached her [during the conversation] and without her consent laid hands on her in a sexually coercive manner."

Padgett brought suit against Wilson in the United States District Court in January of 1993. She claimed battery, outrage, and violation of her constitutional rights under 42 U.S.C. § 1983 for the sexual harassment. The claim for

outrage was dismissed, but the other claims were submitted to the jury. The jury returned a verdict in favor of Padgett and awarded her $2,500 actual damages for assault and battery; $2,500 actual damages for the sexual harassment claim; and $20,000 in punitive damages for the § 1983 claim, which would increase to $100,000 in the event that Wilson was insured. A judgment for $25,000 was entered on August 16, 1994.

The IRF issued a general tort liability policy to the named insured, South Carolina State University. Prior to the trial, attorneys for the IRF participated fully in the discovery process. However, the IRF determined Wilson was not an insured as defined by the policy and denied coverage. The IRF's attorneys did not participate any further in the trial. Wilson did not challenge this finding during the first trial, nor did he make any appearance in this declaratory judgment action.

Padgett filed this declaratory judgment action to determine if coverage existed under the policy. Both parties filed summary judgment motions. Padgett's motion was denied by order filed May 21, 1996. The IRF's motion was granted by order dated September 3, 1997.

## *Law/Analysis*

Summary judgment is appropriate when it is clear there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. In determining whether any triable issues of fact exist to preclude summary judgment, the evidence and all inferences which can be reasonably drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Strother v. Lexington County Recreation Comm'n*, 332 S.C. 54, 504 S.E.2d 117 (1998). If any triable factual issues exist, those issues must go to the jury. *Rothrock v. Copeland*, 305 S.C. 402, 409 S.E.2d 366 (1991). Because it is a drastic remedy, summary judgment should be cautiously invoked so no person will be improperly deprived of a trial of the disputed factual issues. *Baughman v. American Tel. and Tel. Co.*, 306 S.C. 101, 410 S.E.2d 537 (1991).

*Scope of Official Duties Under Policy*

■ Padgett argues Wilson meets the definition of an "insured" under the general tort liability policy. She argues Wilson was acting in the scope of his official duties when he committed the battery and sexual assault. We disagree.

The policy contains the following definition of "Persons Insured"

Any employee of the entity designated in the declaration as "named insured" is an insured, but only while the employee is acting in the *scope* of his or her *official duties.* (Emphasis in original.)

Under this definition, Wilson only qualifies for coverage when his actions are in the "scope of his official duties." Under the South Carolina Tort Claims Act, a government employee acts "within the scope of his official duty" when the employee is (1) "acting in and about the official business of the government entity," and (2) "performing official duties." S.C.Code Ann. § 15–78–30(i) (1977 & Supp.1999).[1]

What is within the scope of employment may be determined by implication from the circumstances of the case. One factor is whether the employee was acting in furtherance of the employer's business when the accident happened. . . . An act falls within the scope of the servant's employment if it was reasonably necessary to accomplish the purpose of the servant's employment, and it was done in furtherance of the master's business.

*Wade v. Berkeley County,* 330 S.C. 311, 319, 498 S.E.2d 684, 688 (Ct.App.1998) (citations omitted).

---

1. The IRF changed the policy definition of "insured" in response to *South Carolina Budget and Control Board v. Prince,* 304 S.C. 241, 403 S.E.2d 643 (1991). When *Prince* was decided, the IRF policy covered employees acting "in the course of employment." Our supreme court held the policy's coverage of employees "in the course of employment" was broader than the Tort Claims Act's coverage of employees acting "in the scope of official duty." *Id.* The IRF amended its insurance policy, effective January 1, 1991, to mirror the Tort Claims Act by covering a State employee "only while . . . acting in the scope of his or her official duties." Therefore, the definition of "scope of official duty" in the Tort Claims Act is useful in determining the phrase's meaning under the IRF policy.

Wilson's actions in this case were not within the scope of his official duties. *Cf. Loadholt v. South Carolina Budget & Control Bd.,* 339 S.C. 165, 528 S.E.2d 670 (Ct.App.2000) (sexual misconduct of sheriff with department employees, after summoning employees into his office under pretext of discussing jail or departmental business, outside scope of official duties and not covered by IRF policy); *Doe v. South Carolina Budget & Control Bd.,* 329 S.C. 214, 494 S.E.2d 469 (Ct.App. 1997), *aff'd* 337 S.C. 294, 523 S.E.2d 457 (1999) (police officer who stopped female motorists on suspicion of DUI and gave them the option of being arrested or providing sexual favors acted outside scope of official duties). Wilson was not providing instruction, acting in his capacity as a faculty member, or furthering Padgett's education. In fact, Padgett was not even a student of Wilson's, nor did she know who he was until after the incident.

Padgett argues Wilson's scope of official duties should be construed broadly due to the relationship between students and professors. She maintains professors are intimately involved in the lives of the students, acting as counselors, advisors, and consolers. She further opines that Wilson's mingling with students in the lobby was within the scope of his duties, since professors must maintain working relationships with students. Even under this broad scope of duties, Wilson's actions against Padgett were outside the scope of his official duties. *See Doe,* 329 S.C. at 220, 494 S.E.2d at 472 (citing *South Carolina Med. Malpractice Liab. Ins. Joint Underwriting Ass'n v. Ferry,* 291 S.C. 460, 463, 354 S.E.2d 378, 381 (1987)) (stating the scope of an employee's duties does not include all forms of conduct engaged in by members of the employee's profession).

*Ambiguity in Insurance Contract*

Padgett next argues the contract contains ambiguities which should be construed in favor of providing coverage for Wilson's acts. "A contract is ambiguous only when it may fairly and reasonably be understood in more ways than one. Where the language of a contract is plain and capable of legal construction, that language alone determines the instrument's force and effect." *Jordan v. Security Group, Inc.,* 311 S.C. 227, 230, 428 S.E.2d 705, 707 (1993) (citations omitted).

The alleged ambiguity arises when the policy's definition of personal injury is compared with the definition of persons insured. The policy defines personal injury to include injury arising out of "discrimination on the basis of race, sex, age, religion or handicap." Wilson argues the policy's coverage of discrimination is inconsistent with the definition of "persons insured" because under a restrictive definition of persons insured, discrimination would always be outside the scope of the employee's official duties. She maintains this creates a discrepancy that mandates a broader definition of "persons insured" so as to provide coverage for Wilson's actions. We disagree.

The policy's coverage of discrimination is not inconsistent with its definition of an insured because discrimination may be alleged where an employee has acted within the scope of his or her official duties. For example, if a person charged with making personnel decisions is accused of discriminating in hiring or firing someone, the alleged discrimination falls within the scope of that person's official duties. Additionally, the IRF policy covers the University as a separate entity. The University would be insured against the discrimination committed by its employees. The policy is not ambiguous.

Because Wilson's actions were outside the scope of his official duties and the policy is unambiguous, the decision of the trial court is

**AFFIRMED.**

CURETON, STILWELL and SHULER, JJ., concur.