THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS
PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(D)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
State Capital Insurance Company, Appellant/Respondent,
v.
Jill Johnson Forrest, Scott Gordon Forrest, Karen B. Smith, as Personal Representative of the Estate of Joseph Drew Smith, a Minor, Deceased,
Respondents,
and Randall W. Smith, Respondent/Appellant.
 
 
 

Appeal From Lexington County
 William P. Keesley, Circuit Court Judge

Unpublished Opinion No. 2005-UP-552
Heard September 14, 2005  Filed October 17, 2005   

AFFIRMED

 
 
 
John H. Tiller, of Charleston, for Appellant-Respondent.
Edwin R. Jeter, Daryl L. Williams, of Columbia, Robert L. Buchanan, of Aiken, for Respondent-Appellant.
 
 
 

 PER CURIAM:  State Capital Insurance Company (State Capital) appeals a portion of a declaratory judgment finding two separate occurrences under the terms of a homeowners insurance policy.  Randall W. Smith also appeals a portion of the order.  We affirm.
FACTS / PROCEDURAL HISTORY
On July 18, 1997, Jill and Scott Forrest set out by boat with two other couples from their home on Lake Murray for a restaurant and bar on the lakes opposite shore.  On board were at least two cases of beer.  The entire party consumed alcohol throughout the trip and subsequent dinner with the exception of Scott Forrest, who stopped drinking at the restaurant in anticipation of operating the boat on the trip home.  The party did not decide to head for home until the early morning hours of July 19.  Before leaving the bar and restaurant, the group became aware that the stern light, required for nighttime navigation, was inoperable, but decided to make the return trip anyway.  Despite the fact that Scott was the most sober of the group, Jill Forrest captained the boat on the way home.
That same evening, Randall Smith and his eleven-year-old son, Drew, were night fishing on the lake on a small fishing boat.  Shortly after leaving the restaurant, the Forrests boat collided with Mr. Smiths boat, killing his young son and sinking the smaller vessel.  Several of the Forrests passengers were thrown from their boat.  Following the collision, Mr. Forrest took control of their boat and began to pick up his passengers.  Deception on the part of the Forrests and their passengers regarding the circumstances of the accident began almost immediately. 
As Mr. Smith floated in the lake, cradling the lifeless body of his son, Mrs. Forrest told her husband that he should tell the authorities he was operating the boat so that assets in her name would not be subject to liability.  The Forrests persuaded the other passengers to go along with this version of the events, and several members of the group promptly began sinking beer cans in the lake to conceal evidence of their earlier drinking.  Due to their deception, it was Mr. Forrest, and not Mrs. Forrest, who was administered a field sobriety test upon the authorities arrival. Most significant to the present appeal, Mr. Forrest claimed during the investigation that Mr. Smith was operating his boat at night without proper lighting, effectively accusing him of unlawful conduct.  So clear was the inference of Mr. Smiths fault, he was given Miranda warnings prior to questioning by the investigating officers. The Forrests also told investigators that their boat had a functioning stern light at the time of the collision, which was another intentional falsehood.
The Forrests ruse was maintained for a few weeks, as much of the investigation focused on Mr. Smith and whether he maintained proper lighting on his fishing boat.  Due to some inconsistencies in the passengers stories, however, the focus of the investigation began to shift to the Forrests.  Weeks after the collision, two of the Forrests passengers confessed to law enforcement regarding the operator of the watercraft at the time of the accident, the status of its stern light, and the concealment of evidence.[1]  
Mr. Smith brought an action against the Forrests, asserting claims based on their negligence in operating the boat as well as their deceitful actions following the accident.  Karen Smith, Drews mother, brought a wrongful death action based on her capacity as personal representative of Drews estate.  Based on a homeowners insurance policy in effect at the time of the accident, State Capital agreed to defend the Forrests under a reservation of rights in these cases.  However, State Capital promptly filed a declaratory judgment action seeking to deny coverage to the Forrests based on two issues relating to ownership of the boat and the residence of Jill Forrests mother, record owner of the boat they were using on the night of the accident.  Due to their interest in the outcome of the declaratory judgment action, the Smiths were also named as party defendants.
On February 19, 2003, a non-jury trial was held on State Capitals action.  The primary focus of the trial was the factual determinations relating to the ownership of the boat and the residence of Mrs. Forrests mother.  Near the close of trial, however, the attorney for the Smiths, heretofore silent as to the initial two issues, addressed the court.  At this time, he raised the issue of the accident and the Forrests behavior that followed as possibly giving rise to two separate occurrences under the terms of the insurance policy.  The insurance policy in question limits recovery to $300,000 per occurrence.  It was the Smiths position that, under the present facts, State Capital faced potential liability of $600,000.
The circuit court requested and received memoranda from State Capital and Mr. Smith on this issue. On May 29, 2003, the circuit issued its final order.  The court rejected State Capitals position on the issues relating to ownership of the boat and the residency of Mrs. Forrests mother.  The order further held that the policy provided insurance for both the first occurrence of the boating accident and the second occurrence of the alleged defamation, for which State capital was also required to defend and indemnify up to a separate policy limit.  State Capital promptly moved for reconsideration of the portion of the order finding that there was a second occurrence under the policy.  Mr. Smith also moved to conform his pleadings to the evidence in order to better articulate his defamation claim and how it relates to the Forrests specific insurance policy.
Before the post-trial motions were argued, both Mrs. Smiths wrongful death action and Mr. Smiths property damage and emotional distress claims were settled.  Only Mr. Smiths defamation claim, arising from the conspiracy which placed suspicion for causing the accident on him, remained.  Following a hearing on the post-trial motions presently on appeal, the conspiracy trial went forward.  Before its conclusion, a settlement was reached, valuing Mr. Smiths defamation claim at $250,000 to be deposited with the Lexington County Clerk of Court and paid out pursuant to further direction by the court following resolution of the post-trial motions and the present appeal.
The circuit court denied State Capitals motion for reconsideration, upholding the portion of its order finding two occurrences under the policy.  The court likewise denied Mr. Smiths motion to amend his pleadings, concluding that the motion was rendered moot by the cases favorable conclusion.  This appeal followed.
STANDARD OF REVIEW
A declaratory judgment action to determine coverage under an insurance contract is an action at law.  Travelers Indem. Co. v. Auto World of Orangeburg, Inc., 334 S.C. 137, 140, 511 S.E.2d 692, 694 (Ct. App. 1999).  In an action at law, tried without a jury, the appellate court will not disturb the trial courts findings of fact unless there is no reasonable evidence supporting them.  Townes Assocs. Ltd. v. City of Greenville, 266 S.C. 81, 86, 221 S.E.2d 773, 775 (1976).  The scope of our review of this case is therefore limited to the correction of errors of law.  Id.
DISCUSSION
State Capital argues the trial court erred in finding a second occurrence under the policy and extending coverage under a separate policy limit to the defamation claim.  We disagree.
The general guidelines for interpreting insurance policies were recently outlined by this court as follows:

Insurance policies are subject to general rules of contract construction.  This Court must enforce, not write, contracts of insurance and we must give policy language its plain, ordinary, and popular meaning.  All of the policy provisions should be considered, and one may not, by pointing out a single sentence or clause, create an ambiguity.  The meaning of a particular word or phrase is not determined by considering the word or phrase by itself, but by reading the policy as a whole and considering the context and subject matter of the insurance contract.
An insurers obligation under a policy of insurance is defined by the terms of the policy itself, and cannot be enlarged by judicial construction.  Ambiguous or conflicting terms in an insurance policy must be construed liberally in favor of the insured and strictly against the insurer.  However, if the intention of the parties is clear, courts have no authority to torture the meaning of policy language to extend or defeat coverage that was never intended by the parties.
The rule of strict construction does not authorize a perversion of language or the exercise of inventive powers for the purpose of creating an ambiguity where none exists.  When a contract is unambiguous, clear, and explicit, it must be construed according to the terms the parties have used.  The judicial function of a court of law is to enforce an insurance contract as made by the parties, and not to rewrite or to distort, under the guise of judicial construction, contracts, the terms of which are plain and unambiguous.

Stewart v. State Farm Mut. Auto. Ins. Co., 341 S.C. 143, 150-151, 533 S.E.2d 597, 601 (Ct. App. 2000) (internal citations omitted).
The homeowners policy at issue in the present case expressly provides coverage for bodily injury and property damage caused by an occurrence. The policys definitions clause defines occurrence as an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:  a. bodily injury; or b. property damage.  The policy includes a special coverage extension, which expands the definition of bodily injury to include personal injury.  Personal Injury is defined as injury arising out of one or more of the following offenses:  2. libel, slander or defamation of character.
Initially, we must settle an apparent ambiguity in the policy.  Although the policy defines occurrence as an accident, the policys definition of covered personal injuries specifically includes defamation, an intentional tort.  Thus, the policy purports to provide coverage for certain intentional torts under [its] definition of covered personal injuries, yet it attempts to deny coverage for injuries expected or intended under the definition of an occurrence.  South Carolina State Budget & Control Bd. v. Prince, 304 S.C. 241, 248, 403 S.E.2d 643, 647 (1991).  When a policy is, such as this one, susceptible to more than one reasonable interpretation, one of which would provide coverage, [an appellate court] must hold as a matter of law in favor of coverage.  Gaskins v. Blue Cross-Blue Shield of South Carolina, 271 S.C. 101, 108, 245 S.E.2d 598, 602 (1978).  Thus, when faced with a similar policy and the issue of whether damages caused by defamation were covered, our supreme court found that the defamation was an occurrence under the policy, stating [i]t would be unreasonable to interpret this policy to exclude coverage for defamation when the policy specifically includes defamation as a covered personal injury.  Prince, 304 S.C. at 248, 403 S.E.2d at 647. 
We similarly conclude that the defamation of Mr. Smith constitutes a second occurrence under the policy.  The majority of courts have adopted the general view that to determine whether there is a single or multiple occurrence or accident within the meaning of the policy limits clause of a liability policy one must look to the cause or causes of the accident or occurrence.  Michael P. Sullivan, Annotation, What Constitutes Single Accident or Occurrence Within Liability Policy Limiting Insurers Liability To A Specified Amount Per Accident Or Occurrence, 64 A.L.R. 4th 668 (2005).  Applying this analysis to a per person liability cap, this court held that injuries to a second person are not recoverable under a separate policy limit when they are consequential damages, flowing from the same cause as the injuries to the initially injured party.  See Stewart, 341 S.C. at 159,  533 S.E.2d at 605.  Mr. Smiths defamation claim, however, is in no way consequential to the boating accident.  
The actions of the insureds giving rise to the defamation claim did not occur during the accident.  They began during the investigation following the collision and continued for several subsequent weeks.  Although the conspiracy placing blame for the accident on Mr. Smith certainly relates to the boating accident, the cause of the defamatory injuries is solely the intentional deceptive behavior of the Forrests and their guests in the weeks following the accident.  This is a wholly different cause than that of the accident itself, which was caused by the negligent behavior of Mrs. Forrest before and during the collision.  Because the behavior giving rise to Mr. Smiths defamatory injuries began considerably after the accident and continued for weeks following the death of his son, it would be unreasonable to construe the Forrests deplorable behavior as a mere natural consequence of the collision.
In support of their contention, State Capitals brief focuses on case law interpreting the phrase arising out of and its proper construction in an insurance contract to conclude there was only one occurrence.  These cases, however, deal solely with insurance policy clauses outlining what kind of damages are and are not covered by the policies, i.e. clauses of inclusion (stating what kind of damages are covered by the policy) and clauses of exclusion (outlining which damages are not covered).  See, e.g., Howard v. State Farm Mutual Auto. Ins. Co., 316 S.C. 445, 450, 450 S.E.2d 582, 585 (1994) (holding an appellate court must construe the phrase arising out of broadly in a clause of inclusion); McPherson v. Michigan Mut. Ins. Co., 310 S.C. 316, 319-320, 426 S.E.2d 770, 771 (1993) (holding an appellate court must construe the phrase arising out of narrowly in a clause of exclusion).  State Capital would have us ask, did the defamation arise out of the boat collision?  Applying a broad interpretation of the phrase arising out of, the answer is clearly yes.  Thus, argues State Capital, there is only one occurrence.  However, at issue in the present case is not what kind of damages are included or excluded under the policys coverage.  It is undisputed that damages arising out of defamation are covered;[2] thus, the phrase, which appears only in the context of defining what constitutes a personal injury, has little relevance to the matter presently before us.  State Capital asks us to apply the broad interpretation of the phrase arising out of to the definition of occurrence, even though the phrase arising out of appears nowhere in that definition.  As stated above, the proper test to determine if there was more than one occurrence is not whether some damages arise out of others, but whether the damages can be attributed to the same cause.  Because we find, under the unique factual circumstances of the present case, the defamatory injuries suffered by Mr. Smith had a separate cause than those resulting from the accident itself, we conclude there were two separate occurrences under the policy.  The circuit courts decision is therefore
AFFIRMED.[3]
ANDERSON, HUFF, and WILLIAMS, JJ., concur.       

[1] On August 11, 1999, Mrs. Forrest pled guilty to 1) reckless homicide by operation of a boat, 2) obstruction of justice, 3) criminal conspiracy, 4) violation of duties of a vessel operator involved in a collision, and 5) violation of U.S. Coast Guard Navigational Rules.  Mr. Forrest pled guilty to  1) obstruction of justice and 2) criminal conspiracy. 
[2] As previously stated, State Capital has acknowledged the damages resulting from the defamation in this case and the fact that they are covered under the policy, disputing only the issue of whether the damages constitute a second occurrence.
[3]  Because this issue is decided in Mr. Smiths favor, we also affirm the circuit courts denial of Mr. Smiths request to amend his pleadings in order to better argue the issue.