614 S.E.2d 611

**OWNERS INSURANCE COMPANY, Appellant,**

**v.**

**Janette CLAYTON, Richard Johnston, Jr. a/k/a A.R. Johnston, Jr., Lands Inn, Inc., d/b/a Lands Inn and Comfort Inn, Johnston Company, Inc., Robert Bowen, a/k/a Robert Bowners, Linda Silver–Jones, R.C. McEntire, Jr., and Carol Stanley, Defendants,**

**of whom Janette Clayton, Lands Inn, Inc. d/b/a Lands Inn and Comfort Inn are, Respondents.**

**No. 25986.**

Supreme Court of South Carolina.

Heard April 20, 2005.

Decided May 23, 2005.

Rehearing Denied July 7, 2005.

Charles R. Norris, John S. Slosson, and Robert W. Whelan, all of Nelson Mullins Riley & Scarborough, of Charleston, for appellant.

Ervin Lindsay Blanks, of North Charleston, F. Barron Grier, III, of Grier Law Firm, LLC, of West Columbia, James Edward Bell, III, of Sumter, and John E. Parker, of Peters, Murdaugh, Parker, Eltzroth & Detrick, PA, of Hampton, for respondents.

Justice PLEICONES:

This is an appeal from a circuit court order granting respondent Lands Inn and respondent Clayton summary judgment on an insurance policy coverage question, and holding Lands Inn was entitled to indemnification by appellant (Owners) for a $1.25 million judgment in Clayton's tort suit. Owners asserts the circuit court erred in finding that coverage was not precluded by the policy's employment-related practices (ERP) exclusion, and that several other statements in the order are incorrect. We hold that the ERP exclusion does not apply, and that the inaccuracies in the order have not prejudiced Owners. We therefore affirm.

## FACTS

The underlying tort judgment was obtained by Clayton, a former manager of Lands Inn, a motel. Lands Inn fired Clayton for allegedly stealing and embezzling funds. After she was fired, two individuals who called the motel and asked to speak to Clayton were told by a Lands Inn employee that she had been terminated because she had stolen money or misappropriated funds. After a criminal charge against Clayton was nol prossed, she filed a civil suit against Lands Inn. The case was submitted to the jury on three causes of action: malicious prosecution, slander, and negligence. The jury returned a general verdict of $1.25 million, of which $500,000 was for compensatory damages and $750,000 for punitive damages.

Owners provided Commercial General Liability (CGL) coverage to Lands Inn. It defended the Clayton suit under a full reservation of rights, but prior to that trial commenced this

declaratory judgment suit. Owners now appeals a circuit court order granting Lands Inn summary judgment on the coverage issue and holding Lands Inn entitled to indemnification for the $1.25 million Clayton verdict.[1]

## ISSUES

On appeal, Owners raises these issues:

1) Did the trial judge err in finding the policy language ambiguous?

2) Did the trial court err in holding the ERP exclusion did not apply?

3) Did the trial court err in holding that Owners must indemnify Lands Inn for $1.25 million when the policy limit is $1 million?

4) Did the trial court's order and judgment form contain other inaccuracies?

### A. Ambiguous Policy

■ The trial court found the CGL policy "potentially" ambiguous since it purported first to cover malicious prosecution and slander, but then to exclude slander in the ERP exclusion. Relying on *S.C. State Budget & Control Bd. v. Prince*, 304 S.C. 241, 403 S.E.2d 643 (1991), the circuit court concluded that such an inclusion/exclusion situation creates an ambiguity. Owners argues that, logically, exclusions can only apply to otherwise covered items, for if the item is not covered it is by definition excluded. We agree with Owners that the trial court misread *Prince*.

The policy provides this coverage:

COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement.

We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.

---

1. Only the malicious prosecution and defamation theories are involved in this appeal, and the only exclusion issue decided is that of the ERP exclusion. There remain unresolved issues concerning the negligence theory, the failure to cooperate exclusion, and equitable estoppel.

COVERAGE B. PERSONAL AND ADVERTISING INJU-RY LIABILITY

 1. Insuring Agreement

We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" to which this coverage part applies.

The Definitions section of the policy then provides:

 3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any one time.

 10. "Personal injury" means, other than "bodily injury", arising out of one or more of the following offenses:

 a. False arrest, detention or imprisonment;

 **b.** **Malicious prosecution;**

 c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

 **d.** **Oral or written publication of material that slanders or libels a person** or organization or disparages a person's or organization's goods, products or services; or

 e. Oral or written publication of material that violates a person's right of privacy.

(emphasis supplied).

The purported "ambiguity" arises because the ERP exclusion provides:

EMPLOYMENT–RELATED PRACTICES EXCLUSION

 1. The following exclusion is added to COVERAGE A (Section I):

 o. "Bodily injury" arising out of any:

 (1) Refusal to employ;

 (2) Termination of employment;

 (3) Coercion, demotion, evaluation, reassignment, discipline, **defamation,** harassment, humiliation, discrimination or other employment-related practices, policies, acts, or omissions; or

(4) Consequential "bodily injury" as a result of (1) through (3) above.

This exclusion applies whether the insured may be held liable as an employer or in any other capacity and to any obligation to share damages with or to repay someone else who must pay damages because of the injury.

2. The following exclusion is added to COVERAGE B (Section I):

c. "Personal injury" arising out of any:

(1) Refusal to employ;

(2) Termination of employment;

(3) Coercion, demotion, evaluation, reassignment, discipline, **defamation,** harassment, humiliation, discrimination or other employment-related practices, policies, acts, or omissions; or

(4) Consequential "personal injury" as a result of (1) through (3) above.

(emphasis supplied).

In *Prince,* the insurance policy defined "personal injuries" to include several intentional torts. The policy's definition of "occurrence," however, required "an accident ... which results in personal injury or property damage neither expected nor intended from the standpoint of the insured." The *Prince* court held that there was an ambiguity in this definitional section, in that the intentional torts defined as "personal injuries" were effectively eliminated by the definition of "occurrence." We agree with Owners that *Prince* is inapposite, as here the coverage "elimination" is found in one of the policy's exclusions, not in inconsistent definitions.

The trial court erred in finding the policy ambiguous.

### B. *Application of the ERP Exclusion*

 Insurance policy exclusions are construed most strongly against the insurance company, which also bears the burden of establishing the exclusion's applicability. *Boggs v. Aetna Cas. and Sur. Co.,* 272 S.C. 460, 252 S.E.2d 565 (1979). In addition, since the Clayton jury returned a general verdict, a finding that any of the three claims submitted to that jury is not excluded answers the coverage question. *See, e.g., Frazi-*

*er v. Badger,* 361 S.C. 94, 603 S.E.2d 587 (2004) (where general verdict is supported by at least one theory it will be upheld on appeal). As discussed below, we find that coverage for the Clayton defamation award is not precluded by the ERP exclusion.

 The ERP exclusion specifically excludes coverage for "Bodily Injury" and "Personal Injury" "arising out of any . . . defamation . . . or other employment-related practices, policies, acts, or omissions. . . ." In South Carolina, the term "arising out of" when used in an insurance policy exclusion should be narrowly construed to mean "caused by." *McPherson v. Michigan Mut. Ins. Co.,* 310 S.C. 316, 426 S.E.2d 770 (1993). Further, in determining whether post-termination defamations such as the ones here fall within an ERP exclusion, courts generally inquire whether the statement was made in the context of employment, and whether the statement's content describes the employee's performance. *HS Servs. v. Nationwide Mut. Ins. Co.,* 109 F.3d 642 (9th Cir. 1997) (defamation not clearly employment related because while statement's contents related to employment, the statements were not made in the context of employment, but rather to competitors to discourage business dealings with former employee); *Adams v. Pro Sources,* 231 F.Supp.2d 499 (M.D.La.2002); *see also Frank and Freedus v. Allstate Ins. Co.,* 45 Cal.App.4th 461, 52 Cal.Rptr.2d 678 (1996) (was post-termination statement directed to performance while employed and made in employment context).

In her tort suit, Clayton presented evidence of two separate defamations. One occurred when a former hotel guest called Lands Inn and asked to speak with Clayton. When told she "was no longer here," the caller asked whether she had quit and was told Clayton had been "let go." When the caller pressed for a reason, the receptionist replied, "Well, she misappropriated funds so we let her go." The second defamation occurred when a person with whom Clayton had a separate business relationship called the motel to speak with her and was told Clayton had been fired or let loose, and either that she had stolen or embezzled thousands of dollars.[2]

---

2. The witness was unclear as to the exact words used.

The trial court correctly held that these defamations were not "employment-related" and that therefore the ERP exclusion did not negate Owners' obligation to indemnify Lands Inn under the CGL policy. While the substance of the defamatory statements was employment-related, that is, the fact that Clayton had been fired and the reason why, the context was not. The information was not being relayed to other employees to explain Clayton's termination nor was it conveyed to persons such as potential employers who were inquiring about Clayton's performance as an employee. Instead, the Lands Inn employee gratuitously relayed the information to Clayton's acquaintance and to her business associate. The employment *context* was not present here.

■ We therefore affirm the finding that the defamation claim was covered by Owners' policy since it was not within the ERP exclusion. *HS Servs., supra; Adams v. Pro Sources, supra Frank and Freedus, supra.* Our holding that the exclusion does not apply to the defamation claim means that Owners must indemnify Lands Inn for the Clayton general verdict. *Frazier, supra.* Accordingly, we need not address whether the malicious prosecution claim [3] is within the ERP exclusion. *Id.*

### C. *Error in Amount of Indemnification*

The order refers to the CGI policy's $1 million limit several times. In the order's final paragraph, however, it requires that Owners indemnify Lands Inn for the full amount of the $1.25 million Clayton verdict. Owners contends this was error in light of the policy limit, and we agree that the $1.25 million reference appears to be a mere scrivener's error. We decline to revise this portion of the order on appeal, but do so without prejudice to Owners' right to file a Rule 60(a), SCRCP, motion for relief in the circuit court.

### D. *Other Scriveners' Errors*

■ Owners complains that the appealed order and the accompanying judgment form contain several additional cleri-

---

**3.** Clayton was arrested, charged, and indicted for "Breach of Trust with Fraudulent Intent" in violation of S.C.Code Ann. § 16–13–230, based on allegations that Clayton took Lands Inn's money while serving as the business's manager.

cal errors. Respondents concede these errors exist, but contend that the errors have caused neither prejudice to Owners nor confusion in the circuit court. Owners does not contest respondents' contentions. Error without prejudice does not warrant reversal. *E.g., Loftis v. SCE & G,* 361 S.C. 434, 604 S.E.2d 714 (Ct.App.2004).

## CONCLUSION

We affirm the trial court order holding that Owners must indemnify Lands Inn for the Clayton verdict, without prejudice to Owners' right to move pursuant to Rule 60(a), SCRCP for the correction of the amount to be indemnified.

AFFIRMED.

TOAL, C.J., MOORE, WALLER, and BURNETT, JJ., concur.