**STATE FARM FIRE AND CASUALTY COMPANY, Plaintiff,**

v.

**Ernest WEAVER and Linda Erickson, Defendants.**

**C.A. No. 2:06–cv–01752–PMD.**

United States District Court, D. South Carolina, Charleston Division.

Jan. 15, 2008.

Timothy A. Domin, Clawson and Staubes, Charleston, SC, for Plaintiff.

George J. Kefalos, George J. Kefalos Law Office, Charleston, SC, Russell Stanley Stemke, Russell S. Stemke Law Office, Isle of Palms, SC, for Defendants.

## ORDER

PATRICK MICHAEL DUFFY, District Judge.

This matter is before the court upon Plaintiff State Farm Fire and Casualty Company's ("State Farm" or "Plaintiff") Motion for Summary Judgment. For the reasons set forth herein, the court grants Plaintiff's motion.

## BACKGROUND

The facts of this case, considered in the light most favorable to Defendants, are as follows:

State Farm issued certain insurance policies to Defendant Ernest Weaver ("Weaver"): a Homeowner's Policy, a Premises/Personal Liability Policy, and two Rental Dwelling Policies. These policies were renewed over a period of years.

In August of 2001, Defendant Linda Erickson ("Erickson") brought suit against Weaver and others in the Court of Common Pleas for Charleston County, asserting claims, *inter alia,* of civil conspiracy, negligence, and defamation. Erickson alleged in her Amended Complaint that Weaver and other defendants recruited others to join the Domestic Court Reform Movement. (Mot. for Summ. J. Ex. 20 ¶ 15.) She further alleged that the Domestic Court Reform Movement and its members (including Weaver) "negligently, willfully, recklessly and/or maliciously arranged for, assisted with, and financed the creation and publication" of a " 'report' that was circulated in various counties in the State of South Carolina regarding the Plaintiff, and advising those that hired her how to utilize the said report to their advantage in their endeavors to cause harm to the Plaintiff." (Mot. for Summ. J. Ex. 20 ¶¶ 20, 18.) Plaintiff alleged the report was "replete with defamatory statements about the Plaintiff" and that Weaver and others assisted with the creation and publication of the report "with the knowledge and intent that said report would thereafter be provided free of charge to others, including ... lawyers and/or Family Court Judges by whom she would normally have obtained employment as Guardian Ad Litem and/or a Licensed Professional Counselor by recommendation, referral, consent or otherwise." (Mot. for Summ. J. Ex. 20 ¶¶ 19–20.) Plaintiff further asserted that as a result of the actions of Weaver and the other defendants, she had difficulty continuing her employment as a private Guardian Ad Litem. (*See* Mot. for Summ. J. Ex. 20 ¶¶ 26, 57, 68.)

According to State Farm, it denied coverage to Weaver under the Rental Dwell-

ing Policies and the Premises/Personal Liability Policy but defended him pursuant to a reservation of rights under his Homeowner's Policy. (Mem. in Supp. at 2.) On or about March 31, 2006, Erickson was successful in her suit against Weaver, and judgment was entered against Weaver on Erickson's claims for civil conspiracy and defamation in the amount of $243,540.82 in actual damages and $1,440,000.00 in punitive damages. (*See* Mot. for Summ. J. Ex. 21.) [1]

On June 9, 2006, State Farm filed the instant suit against Weaver and Erickson, seeking a declaration that it "owes no duty to indemnify or further defend Ernest Weaver in connection with the Erickson matter and verdict." (Compl. at 4.) On June 1, 2007, State Farm filed a Motion for Summary Judgment, which Defendants Weaver and Erickson oppose.

### ANALYSIS

Plaintiff State Farm moved for summary judgment and has made several arguments as to why the court should grant summary judgment in its favor. However, before turning to the parties' arguments, the court will review the relevant policy language.

### A. Policy Language

#### 1. The Homeowner's Policy

The Homeowner's Policy provides for coverage "[i]f a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage to which this coverage applies, caused by an occurrence ..." (Mot. for Summ. J. Ex. 4 at 17 [19–5].) The policy defines an "occurrence" as "an accident, including exposure to conditions, which results in: a. bodily injury; or b. property damage; during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one occurrence." (Mot. for Summ. J. Ex. 4 at 11 [19–5].) Excluded from coverage is bodily injury or property damage "(1) which is either expected or intended by an insured; or (2) to any person or property which is the result of willful and malicious acts of an insured." (Mot. for Summ. J. Ex. 4 at 18 [19–5].)

#### 2. The Rental Dwelling Policies

State Farm issued two Rental Dwelling Policies to Weaver for two locations, one on Jadewood Street and another on Waldon Road. (Mot. for Summ. J. Ex. 3.) [2] The policies provide for coverage "[i]f a claim is made or a suit is brought against any insured for damages because of bodily injury, personal injury, or property damage to which this coverage applies, caused by an occurrence, and which arises from the ownership, maintenance, or use of the insured premises ..." (Mot. for Summ. J. Ex. 8 at 14 [19–9].) An occurrence is defined as "an accident, including exposure to conditions, which results in: a. bodily injury; b. property damage; or c. personal

---

1. Both Weaver and Erickson have appealed. Weaver appealed the judgment entered against him by virtue of the jury's verdict, and Erickson appealed a variety of rulings, including the directed verdicts granted in favor of Weaver on her cause of action for (1) negligent supervision/negligent hiring and (2) negligence. (*See* Erickson's Resp. in Opp'n Ex. 9.) Erickson has also appealed the trial court's finding that she is a "limited purpose public official" "on a variety of grounds including, but not limited to, the Supreme

Court's pronouncement that private [Guardian Ad Litems], and specifically Ms. Erickson herself, are not public officials." (Erickson's Resp. in Opp'n at 13 n. 8.) The appeal is apparently still pending.

2. According to Plaintiff, the two policies contain identical forms, options, and terms, with the exception that one contains an earthquake endorsement that the other does not. (*See* Mem. in Supp. at 3.) Defendants do not appear to take issue with this assertion.

injury." (Mot. for Summ. J. Ex. 8 at 10 [19–9].) "Personal injury" is defined as "injury arising out of one or more of the following offenses: ... libel, slander, or defamation of character." (Mot. for Summ. J. Ex. 8 at 10 [19–9].) The policies provide that this coverage does not apply to bodily injury, personal injury, or property damage "(1) which is either expected or intended by an insured; or (2) to any person or property which is the result of willful and malicious acts of an insured." (Mot. for Summ. J. Ex. 8 at 14 [19–9].)

### 3. Premises/Personal Liability Policy

This policy contains a "personal liability" provision, which provides for coverage "[i]f a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage to which this coverage applies ..." (Mot. for Summ. J. Ex. 15 at 11 [19–16].) It also contains a "rental premises liability" provision, which provides for coverage "[i]f a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage to which this coverage applies and which arises from the ownership, maintenance, or use of the insured location ..." (Mot. for Summ. J. Ex. 15 at 12 [19–16].) The policy indicates that it does not provide coverage for "bodily injury or property damage which is expected or intended by an insured." (Mot. for Summ. J. Ex. 15 at 13 [19–16].)

### B. The Duty to Defend/Indemnify

Pursuant to South Carolina law, an insurer's duty to defend is determined by the allegations of the underlying complaint. *Ellett Bros., Inc. v. U.S. Fid. & Guar. Co.*, 275 F.3d 384, 387–88 (4th Cir. 2001) (citing *R.A. Earnhardt Textile Mach. Div., Inc. v. S.C. Ins. Co.*, 277 S.C. 88, 90, 282 S.E.2d 856, 857 (1981)). If the facts alleged in the underlying complaint "fail to bring the case within the policy coverage, the insurer is free of the obligation to defend." *R.A. Earnhardt*, 277 S.C. at 90, 282 S.E.2d at 857. However, the complaint is construed liberally, with all doubts resolved in favor of the insured. "If the underlying complaint creates a possibility of coverage under an insurance policy, the insurer is obligated to defend." *Isle of Palms Pest Control Co. v. Monticello Ins. Co.*, 319 S.C. 12, 15, 459 S.E.2d 318, 319 (Ct.App.1994) (citing *Gordon–Gallup Realtors, Inc. v. Cincinnati Ins. Co.*, 274 S.C. 468, 471, 265 S.E.2d 38, 40 (1980)). While the duty to defend is based on the allegations in the underlying complaint, the "duty to indemnify is based on evidence found by the factfinder." *Ellett Bros.*, 275 F.3d at 388.

### C. The Parties' Arguments

State Farm argues it has no duty to defend or indemnify Weaver under the Homeowner's Policy on the claim of civil conspiracy or the claim of defamation because (1) Weaver's actions were not an "occurrence" under the policy and (2) coverage is barred by the "intentional acts" exclusion. (*See* Mem. in Supp. at 5–11.) State Farm argues it has no duty to defend or indemnify Weaver under the Premises/Personal Liability Policy or the Rental Dwelling Policies because (1) Erickson's injuries did not "arise from" the use of Weaver's properties, and (2) coverage is barred by the "intentional acts" exclusion. (*See* Mem. in Supp. at 11–14.)

In Weaver's Response in Opposition to the Motion for Summary Judgment, he asserts he claims coverage for the defamation action but not for the conspiracy cause of action. (Weaver's Resp. in Opp'n at 2.) Weaver asserts that because the jury returned a general verdict on both the conspiracy and defamation causes of action, and because there is coverage for the defamation cause of action, "it makes no difference that the conspiracy cause of action might have been excluded from coverage." (Weaver's Resp. in Opp'n at 2.) Weaver

argues the Rental Dwelling Policy covers defamation as a personal injury and that State Farm is mistaken in its assertion that defamation is an intentional tort and can never satisfy the definition of an occurrence. (Weaver's Resp. in Opp'n at 2–3.) Furthermore, Weaver argues that because the insured premises was the situs of the defamation, the defamation arose out of the ownership, maintenance, or use of the insured premises. (Weaver Resp. in Opp'n at 5.) Lastly, Weaver argues the "intentional acts" exclusion does not bar coverage as a matter of law because "[r]egardless of the allegations contained in Erickson's complaint, Weaver has always denied any intent to do harm." (Weaver's Resp. in Opp'n at 6.)

In Erickson's response, she argues that while Plaintiff asserts coverage is to be determined from the four corners of the underlying complaint, it "then goes on to cite to allegations from Erickson's Amended Complaint that are not contained within, incorporated into, included as part of or otherwise used to support Plaintiff's cause of action for defamation." (Erickson's Resp. in Opp'n at 3.) She states, "Obviously, allegations not part of Erickson's claim which formed the basis of the jury's verdict against Plaintiff's insured for defamation cannot be used to support a claim of non-coverage." (Erickson's Resp. in Opp'n at 3.) According to Erickson, a review of the paragraphs contained in the defamation action reveal that Erickson "neither alleges or even infers that Defendant Weaver purposely or intentionally defamed her anywhere within those paragraphs." (Erickson's Resp. in Opp'n at 3.) She spends much time asserting the Amended Complaint only sought to show implied malice with respect to the defamation claim and that "[t]his form of malice is not necessarily inconsistent with an honest or even laudable purpose and does not imply ill will, personal malice, hatred, or a purpose to injure." (Erickson's Resp. in Opp'n at 5.) Furthermore, Erickson states that Weaver denied the allegations of her complaint and that "none of the things described by Plaintiff ... were necessary to prevail on a cause of action for defamation." (Erickson's Resp. in Opp'n at 7.)

Erickson also cites *Holtzscheiter v. Thomson Newspapers, Inc.,* 332 S.C. 502, 506 S.E.2d 497 (1998), for the proposition that defamation need not be the result of an intentional act but instead can be based upon a simple act of negligence. (Erickson's Resp. in Opp'n at 9.) Erickson argues that even if Plaintiff argues Erickson is a public figure, "that standard merely means that ... Erickson would have had to prove that Weaver published defamatory statements with knowledge of its falsity or with reckless disregard of the truth, and requires no showing of intent to injure." (Erickson's Resp. in Opp'n at 9.)

Erickson asserts that the Premises/Personal Liability Policy purchased by Weaver does not limit its coverage to "occurrences." (Erickson's Resp. in Opp'n at 21.) Erickson argues that if the court finds "personal liability" coverage under this policy, "then the only issue, with regard to this particular policy, would be whether or not Plaintiff can escape responsibility by proving to a jury that Mr. Weaver intended to cause Erickson the bodily injury that she sustained." (Erickson's Resp. in Opp'n at 22.) Furthermore, with respect to the business liability coverage in that policy, Erickson asserts that any alleged lack of an occurrence is irrelevant. (Erickson's Resp. in Opp'n at 23.) Turning to State Farm's argument that the defamation did not arise out of the ownership, maintenance, or use of insured premises, Erickson argues State Farm is not entitled to summary judgment because

in light of the activities engaged in by Weaver, and especially the extent of activities, the ongoing nature of the activities and the lack of any other "hub,"

"home" or "office" for the group[']s activities, such that Weaver[']s houses by use of his centralized location at which all telephone contact was made to and made from, creation and maintenance of records of potential members and their telephone numbers, area and materials to build and store signs and pickets, area in which to hold meetings and plan events, and area from which other tasks were arranged, organized and/or originated and ended, including recruiting through call-ins on the Dan Moon show and the use of the insured premises (which by definition included all outhouses and the land itself) to keep the vehicle used to bring Ms. Winner to their pre-selected "interviewees," ... there can be little question but that Weaver's liability and Erickson's injuries are incident to, flowed from, had connection with and shared a causal connection with Weaver's ownership and use of whichever house and/or houses Weaver used for the foregoing purposes.

(Erickson's Resp. in Opp'n at 25–26.) Lastly, Erickson argues that she was not required to prove intent in order to prevail on her cause of action for defamation and that Weaver has consistently maintained that he did not know that what he was saying was not true. (Erickson's Resp. in Opp'n at 27.)

### 1. Homeowner's Policy & Civil Conspiracy: State Farm Argues There Was No "Occurrence"

■ State Farm first argues it does not have a duty to defend or indemnify Weaver on the claim for civil conspiracy under the Homeowner's Policy because Weaver's actions were not an "occurrence." (Mem. in Supp. at 5.) The Homeowner's Policy defines an "occurrence" as "an accident, including exposure to conditions, which results in: a. bodily injury; or b. property damage; during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one occurrence." (Mot. for Summ. J. Ex. 4 at 11 [19–5].)

■ In South Carolina, a civil conspiracy exists when there is "(1) a combination of two or more persons, (2) for the purpose of injuring the plaintiff, (3) which causes the plaintiff special damage." See Robertson v. First Union Nat'l Bank, 350 S.C. 339, 348, 565 S.E.2d 309, 314 (Ct.App. 2002); Future Group, II v. Nationsbank, 324 S.C. 89, 100, 478 S.E.2d 45, 50 (1996). When the jury found Weaver liable for civil conspiracy, it thus found that Erickson had established those three elements by the preponderance of the evidence. As noted, an "occurrence" is an "accident," but the term "accident" is not defined in the policy.

Since "accident" is not specifically defined in the policies, the term should be defined according to the usual understanding of the term's significance to the ordinary person. USAA Property and Casualty Ins. Co. v. Rowland, 312 S.C. 536, 435 S.E.2d 879 (Ct.App.1993). The South Carolina Supreme Court has interpreted the term "accident" to mean "an effect which the actor did not intend to produce and cannot be charged with the design of producing." Goethe v. New York Life Ins. Co., 183 S.C. 199, 190 S.E. 451 (1937). More plainly stated, an intended injury cannot be accidental. Id.

Mfrs. & Merchs. Mut. Ins. Co. v. Harvey, 330 S.C. 152, 158–59, 498 S.E.2d 222, 225 (Ct.App.1998).[3] In the context of an accidental death insurance policy, the Supreme Court of South Carolina stated, "Injuries are regarded as accidental unless it can be

---

3. The opinion in Goethe states,

The rule clearly deducible from the overwhelming weight of authority is that, when injury or death follows or results from a voluntary act of the insured, and the act is one which is not manifestly dangerous, but

said that they are a natural or probable result of the insured's action, reasonably foreseeable by the insured or by a reasonably prudent person in the same position." *Gulledge v. Atl. Coast Life Ins. Co.*, 255 S.C. 472, 476, 179 S.E.2d 605, 606 (1971). Because the jury found that Weaver intended to harm Erickson, there can be no coverage for civil conspiracy under the Homeowner's Policy as there was no "occurrence."

### 2. Homeowner's Policy & Civil Conspiracy: State Farm Argues Coverage Is Barred by the "Intentional Acts" Exclusion [4]

■ State Farm also argues there is no coverage under the Homeowner's Policy for civil conspiracy because coverage is barred by the "intentional acts" exclusion. (Mem. in Supp. at 6.) This exclusion states that the following is excluded from coverage: bodily injury or property damage "(1) which is either expected or intended by an insured; or (2) to any person or property which is the result of willful and malicious acts of an insured." (Mot. for Summ. J. Ex. 4 at 18 [19–5].)

■ In *Vermont Mutual Insurance Co. v. Singleton*, 316 S.C. 5, 446 S.E.2d 417 (1994), the Supreme Court of South Carolina interpreted an insurance policy provision that excluded coverage to bodily injury "which is expected or intended by the insured." *Vermont Mut.*, 316 S.C. at 9, 446 S.E.2d at 420. The court stated that

the "validity of the policy exclusion" rests on a two-prong intentional act analysis. *Id.* at 9, 446 S.E.2d at 421. For the exclusion to apply, the act causing the loss must be intentional, and the results of the act must have been intentional. *Id.* at 8, 446 S.E.2d at 419. The Supreme Court in *Vermont Mutual* decided not to disturb the referee's decision that the insured did not intend the specific result because the record supported the finding that the insured was provoked and simply defending himself. *Id.* at 9–10, 446 S.E.2d at 420.

Based on the findings the jury made in finding Weaver liable for civil conspiracy, the court finds he is not entitled to indemnity for that claim under the Homeowner's Policy because coverage is barred by the intentional acts exclusion. While Weaver argues he did not intend to harm Erickson, there does not seem to be any dispute concerning whether his acts in recruiting others to join his cause or in publishing the report were intentional. Furthermore, by the jury finding that he intended to harm Plaintiff, the jury found that the results of his actions were intentional. Weaver is thus not entitled to indemnity for civil conspiracy under the Homeowner's Policy.

### 3. Homeowner's Policy & Defamation: State Farm Argues Weaver's Actions Were Not an "Occurrence"

State Farm argues that it does not have a duty to defend or indemnify Weaver on

which is ordinarily done or performed without serious consequences to the doer, such result is caused by accidental means ... An effect which does not ordinarily follow and cannot be reasonably anticipated from the use of those means, an effect which the actor did not intend to produce and cannot be charged with the design of producing, is produced by accidental means.
*Goethe*, 190 S.E. at 458 (internal quotation marks and citation omitted).

4. Because the court determines there has not been an "occurrence" under the Home-

owner's Policy with respect to the civil conspiracy claim, the court need not address whether a policy exclusion applies. *See generally L–J, Inc. v. Bituminous Fire & Marine Ins. Co.*, 366 S.C. 117, 621 S.E.2d 33 (2005) (declining to address whether policy exclusions apply after having found the lack of an "occurrence"). However, in the alternative, the court finds State Farm has no duty to indemnify Weaver because coverage is barred by the intentional acts exclusion.

the cause of action for defamation because Weaver's actions were not an "occurrence" under the policy. State Farm states that "[c]ourts across the country have denied coverage by holding that allegedly defamatory acts were not accidental and hence not an 'occurrence' within the meaning of the policy." (Mem. in Supp. at 7–8.) State Farm further argues that it is entitled to summary judgment "because an examination of the Complaint suggests no occurrence, and thus does not invoke a duty to defend." (*Id.* at 8.) Plaintiff also argues the facts proven at trial were intentional acts by the insured. (*Id.*)

■ The policy defines an "occurrence" as "an accident, including exposure to conditions, which results in: a. bodily injury; or b. property damage; during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one occurrence." (Mot. for Summ. J. Ex. 4 at 11 [19–5].)[5] To prevail on a cause of action for defamation pursuant to South Carolina law, a plaintiff must prove the existence of some message that

(1) is defamatory, (2) is published with actual or implied malice, (3) is false, (4) is published by the defendant, (5) concerned the plaintiff, and (6) resulted in legally presumed or in special damages.

*Richardson v. State–Record Co.*, 330 S.C. 562, 565 n. 2, 499 S.E.2d 822, 824 (Ct.App. 1998) (citing *Parker v. Evening Post Pub-*

*lishing Co.*, 317 S.C. 236, 242–43, 452 S.E.2d 640, 644 (Ct.App.1994)).

The Supreme Court of South Carolina addressed the definition of an "occurrence" in the context of a defamation action in *South Carolina State Budget & Control Board v. Prince*, 304 S.C. 241, 403 S.E.2d 643 (1991). In that case, Prince allegedly defamed two fellow school board members, and at the trial against Prince, the trial judge submitted the case to the jury solely on whether the remarks were made with actual malice and whether the remarks resulted in damage to the school board members' reputations. *Prince*, 304 S.C. at 244, 403 S.E.2d at 645. The jury returned a verdict in favor of the school board members. *Id.* at 244, 403 S.E.2d at 645. The insurer then brought a declaratory judgment action against Prince and the school board members, arguing, *inter alia*, that Prince's defamation of the school board members was not an "occurrence" since his conduct was intentional. *Id.* at 244, 403 S.E.2d at 645–46. However, the trial judge found the policy provided coverage to Prince. *Id.* at 245, 403 S.E.2d at 646.

One of the issues on appeal was whether there was an occurrence. The policy's definition of an "occurrence" was "an accident ... which results in personal injury or property damage neither expected nor intended from the standpoint of the insured." *Id.* at 247, 403 S.E.2d at 647. This policy's definition of "personal inju-

---

**5.** The policy defines "bodily injury" as meaning

physical injury, sickness, or disease to a person. This includes required care, loss of services and death resulting therefrom.
Bodily injury does not include:
a. any of the following which are communicable: disease, bacteria, parasite, virus, or other organism, any of which are transmitted by any insured to any other person;
b. the exposure to any such disease, bacteria, parasite, virus, or other organism by any insured to any other person; or

c. emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury unless it arises out of actual physical injury to some person.
(Mot. for Summ. J. Ex. 2 at 1.)
"Property damage" is defined as "special damage to or destruction of tangible property, including loss of use of this property. Theft or conversion of property by an insured is not property damage." (*Id.* at 2.)

ries" specifically included defamation. *Id.* at 248, 403 S.E.2d at 647. The Supreme Court of South Carolina stated,

> [T]he policy purports to provide coverage for certain intentional torts under the policy's definition of covered personal injuries, yet it attempts to deny coverage for injuries expected or intended under the definition of an occurrence. This internal inconsistency in the policy renders it ambiguous and when a policy is susceptible to more than one reasonable interpretation, one of which would provide coverage, this Court must hold as a matter of law in favor of coverage.
>
> It would be unreasonable to interpret this policy to exclude coverage for defamation when the policy specifically includes defamation as a covered personal injury. This is especially true as the policy does not contain an intentional act exclusion, but rather, it definitively purports to cover certain intentional acts. In sum, we conclude that the defamation in this case is a "personal injury" caused by an "occurrence" as these terms are used in the policy.

*Id.* at 248, 403 S.E.2d at 647–48 (internal quotation marks and citations omitted).[6]

In *Manufacturers & Merchants Mutual Insurance Co. v. Harvey*, 330 S.C. 152, 498 S.E.2d 222 (Ct.App.1998), the Court of Appeals of South Carolina considered "wheth-

---

**6.** Although the opinion does not discuss the term "occurrence," a more recent South Carolina case discussed *Prince.* In *Owners Insurance Co. v. Clayton*, 364 S.C. 555, 614 S.E.2d 611 (2005), the court considered a circuit court holding that the motel Lands Inn was entitled to indemnification by Owners Insurance Company for a judgment in a tort suit by a former employee of the motel. The former employee was fired for allegedly stealing and embezzling funds, and two individuals who called the motel after she had been fired were told that she had been terminated because she had stolen money. *Id.* at 557, 614 S.E.2d at 612–13. The former employee brought suit against the motel for malicious prosecution, slander, and negligence, and the jury returned a general verdict in favor of the former employee. *Id.* at 557, 614 S.E.2d at 613. The insurance company brought a declaratory judgment action, but the circuit court granted summary judgment to the motel and held that it was entitled to indemnification on the verdict. *Id.* at 557–58, 614 S.E.2d at 613. The lower court found the policy at issue was potentially ambiguous because it "purported first to cover malicious prosecution and slander, but then to exclude slander in the [employment-related practices (ERP)] exclusion." *Id.* at 558, 614 S.E.2d at 613. The Supreme Court of South Carolina disagreed that this situation created an ambiguity, finding that the trial court misread *Prince* because "exclusions can only apply to otherwise covered items, for if the item is not covered it is by definition excluded." *Id.* at 558, 614 S.E.2d at 613. The policy stated that it would "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." *Id.* at 559, 614 S.E.2d at 613. The policy defined "personal injury" to mean "other than 'bodily injury,' arising out of ... malicious prosecution, ... [or] oral or written publication of material that slanders or libels a person or organization ..." *Id.* at 559, 614 S.E.2d at 613. The employment-related practices exclusion excludes from coverage bodily injury arising out of defamation and personal injury arising out of defamation. *Id.* at 559–60, 614 S.E.2d at 614.

The court held that unlike in *Prince*, the policy was not ambiguous because there was no inconsistency in the definition provisions. *Id.* at 560, 614 S.E.2d at 614. Instead, the coverage " 'elimination' is found in one of the policy's exclusions, not in inconsistent definitions." *Id.* at 560, 614 S.E.2d at 614. The lower court held that the defamations at issue were not "employment-related" because "[w]hile the substance of the defamatory statements was employment-related, that is, the fact that [the former employee] had been fired and the reason why, the context was not." *Id.* at 562, 614 S.E.2d at 615. The Supreme Court of South Carolina affirmed the trial court's finding that the defamation claim was covered by the insurance policy since it was not within the ERP exclusion, as the information was simply "gratuitously relayed." *Id.* at 562, 614 S.E.2d at 615.

er the sexual abuse of a minor by an insured constitutes an 'occurrence' under an insurance contract." *Harvey,* 330 S.C. at 156, 498 S.E.2d at 224. The trial court held the intentional conduct did not constitute an occurrence, and on appeal, appellants argued that sexual abuse can constitute an occurrence because the medical testimony submitted at trial showed that pedophiles do not intend sexual abuse to be harmful. *Id.* at 159, 498 S.E.2d at 225. The court held that sexual abuse of a child "is so inherently injurious to the victim that the perpetrator's intent to harm the child will be inferred as a matter of law." *Id.* at 159, 498 S.E.2d at 226. The court quoted Justice Souter, who addressed the issue while sitting on the New Hampshire Supreme Court; Justice Souter stated,

At the least, therefore, an insured's act is not an accidental contributing cause of injury when the insured actually intended to cause the injury that results. An accident is never present when a deliberate act is performed unless some additional unexpected, independent and unforeseen [circumstance exists or] happening occurs which produces or brings about the result of injury or death. Nor can an insured's intentional act be an accidental cause of injury when it is so inherently injurious that it cannot be performed without causing the resulting injury.

*Id.* at 161, 498 S.E.2d at 227 (quoting *Vermont Mut. Ins. Co. v. Malcolm,* 128 N.H. 521, 517 A.2d 800, 802 (1986)).

■ In the case *sub judice,* none of the confusion discussed in *Prince* arises because the Homeowner's Policy does not purport to provide coverage for intentional torts. In *Allstate Insurance Co. v. La-Pore,* 762 F.Supp. 268 (N.D.Cal.1991), Allstate sought a declaration that it had no duty to defend or indemnify its insured (LaPore) in a defamation action filed in state court. Allstate argued, *inter alia,*

that "the policy only covers 'accidents,' and defamatory statements may not be accidentally uttered." *LaPore,* 762 F.Supp. at 269. The United States District Court for the Northern District of California granted Allstate's motion for judgment on the pleadings:

The California Supreme Court has defined the term "accident" as it appears in a liability policy to mean an unexpected, unforeseen, or undesigned happening or consequence from either a known or unknown cause. . . .

Cases construing the accidental act restriction focus not on the intent of the insured to cause harm, but rather upon the *nature* of the harmful act itself. Where the insured intended all of the acts that resulted in the victim's injury, the event may not be deemed an "accident" merely because the insured did not intend to cause injury.

Defamation, which includes libel and slander, is [an] *intentional* tort which requires proof that the defendant intended to publish the defamatory statement. The very nature of defamation precludes the conclusion that it can occur "accidentally." In addition, the facts of this case demonstrate that Ms. La-Pore's allegedly defamatory statements were not uttered accidentally. Ms. La-Pore apparently made the statements in the context of a military inquiry . . . and reasserted the statements' veracity throughout this lawsuit and the underlying action. The statements were not made "accidentally."

*Id.* at 270–71 (internal quotation marks and citations omitted).

The court finds the defamation action at issue in the case *sub judice* does not meet the policy's definition of an occurrence. This case is unlike *Prince* in that the policy at issue here does not purport to cover defamation. Furthermore, Erick-

son's Amended Complaint alleges that Weaver and other defendants "recruited others to join the Domestic Court Reform Movement by misrepresenting to them its true purpose." (Erickson Am. Compl. ¶ 15.) The Amended Complaint also alleges that "the true purpose and activities" of the defendants, including Weaver, "was to destroy the Plaintiff, cause her financial ruin, drive her out of business, physically and/or mentally harm her and have her imprisoned under false pretenses." (*Id.* ¶ 17.) Erickson alleged that Weaver and others "negligently, willfully, recklessly and/or maliciously arranged for, assisted with, and financed the creation and publication of" a report that was replete with defamatory statements about her. (*Id.* ¶¶ 19–20.) Under the defamation cause of action, Erickson alleges Weaver published false and defamatory statements about her, including that she "was a criminal, belonged in jail, sold babies, engaged in an extramarital affair, was incompetent, and/or subjected children to mistreatment and abuse by physically and sexually abusive parents, and other matter that tended to harm the reputation of the Plaintiff so as to lower her in the estimation of the community or to deter third persons from associating or dealing with her ..." (*Id.* ¶ 50.) Furthermore, at trial, the following exchange occurred:

Q. So you're [Erickson] upset and sued Ernie Weaver for the things he has said you would feel are damaging to you. Is that correct?

A. That they're damaging to me, yes.

Q. Is that the only reason you're suing him?

A. Conspired with the others to ruin me. He says that.

Q. Says he's conspiring to ruin you?

A. He says I'm the one they're going after.

(Trial Tr. 1010.)

Examining the allegations in Erickson's Amended Complaint, the court finds there is no genuine issue of material fact regarding whether the defamation at issue in this case was accidental. The Amended Complaint details a scheme amongst the defendants to ruin Erickson's career, and the court notes that Weaver was ordered to pay punitive damages to Erickson in an amount approximately six times greater than the compensatory damages. This is strongly indicative that the jury concluded Weaver's acts were intentional. *See Clark v. Cantrell*, 339 S.C. 369, 378, 529 S.E.2d 528, 533 (2000) ("The purposes of punitive damages are to punish the wrongdoer and deter the wrongdoer and others from engaging in similar reckless, willful, wanton, or malicious conduct in the future."). The court thus determines there has been no "occurrence" under the Homeowner's Policy.

### 4. Homeowner's Policy & Defamation: State Farm Argues Coverage Is Barred by the "Intentional Acts" Exclusion [7]

■ State Farm also argues there is no coverage under the Homeowner's Policy for defamation because coverage is barred by the "intentional acts" exclusion. (Mem. in Supp. at 6.) This exclusion states that the following is excluded from coverage: bodily injury or property damage "(1) which is either expected or intended by an insured; or (2) to any person or property which is the result of willful and malicious acts of an insured." (Mot. for Summ. J. Ex. 4 at 18 [19–5].)

---

7. Although the court has determined there was no occurrence under the policy, in the alternative, the court concludes the intentional acts exclusion bars coverage.

State Farm argues that applying *Singleton* to this case "reveals that State Farm is justified in denying coverage based on the exclusion." (Mem. in Supp. at 10.) For the intentional acts exclusion to apply, the act causing the loss must be intentional, and the results of the act must have been intentional. *Vermont Mut. Ins. Co.*, 316 S.C. at 8, 446 S.E.2d at 419. State Farm asserts that because the Complaint alleges that Weaver "purposefully engaged in acts that eventually caused harm to Erickson's business and reputation," there is no coverage for the defamation cause of action because of the intentional acts exclusion. (Mem. in Supp. at 11.)

There does not seem to be any real dispute in the case *sub judice* concerning whether the acts causing the loss were intentional. Weaver instead argues that he did not intend to cause harm and that as a result, summary judgment is not appropriate because there is a genuine issue of material fact concerning whether he intended the results of the act. Weaver submits in an affidavit that he did not intend to harm Weaver. (Weaver Aff. ¶ 2.) Despite this statement in Weaver's affidavit, looking at all the evidence in the record, the court concludes there is not a genuine issue of material fact regarding whether he intended the results of his actions. The Amended Complaint alleges that Weaver and other defendants engaged in a personal attack on Erickson, bent on ruining her career. Furthermore, although albeit on a different cause of action, it is absolutely certain the jury determined Weaver intended to harm Erickson, as it found him liable to her for civil conspiracy. Given the allegations in the Amended Complaint, the finding of liability on civil conspiracy, and the award of punitive damages, the court finds there is no genuine issue of material fact regarding whether Weaver intended the results of his actions.

### 5. Premises/Personal Liability Policy and Rental Dwelling Policy

█ The Premises/Personal Liability Policy contains a "personal liability" provision, which provides for coverage "[i]f a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage to which this coverage applies ..." (Mot. for Summ. J. Ex. 15 at 11 [19–16].) The policy indicates that it does not provide coverage for "bodily injury or property damage which is expected or intended by an insured." (Mot. for Summ. J. Ex. 15 at 13 [19–16].)

State Farm argues it has no duty to defend or indemnify Weaver under the Premises/Personal Liability Policy because Erickson's injuries did not "arise from" use of Weaver's properties. (Mem. in Supp. at 11.) What is unclear from State Farm's memorandum, however, is why this argument helps State Farm avoid liability under the "personal liability" provision of the policy. The "personal liability" portion of the policy does not appear to require that Erickson's injuries arise from use of Weaver's property. Instead, it indicates that "[i]f a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage to which this coverage applies," State Farm will pay up to its limit of liability for which the insured is legally liable. (Mot. for Summ. J. Ex. 15 at 11 [19–16].) An exclusion indicates that this coverage does not apply to "bodily injury or property damage arising out of premises owned or rented to an insured which are not insured locations." (Mot. for Summ. J. Ex. 15 at 11 [19–16].) Given that the coverage in this policy provides coverage for "personal liability," the court finds that the policy provides coverage. However, the "intentional acts" exclusion applies, and for the same reasons the court found the exclusion barred coverage under the Homeowner's

Policy, the court finds coverage is barred under the personal liability portion of the Premises/Personal Liability Policy.[8]

Weaver also had a Rental Dwelling Policy on two different locations, and that policy provides for coverage "[i]f a claim is made or a suit is brought against any insured for damages because of bodily injury, personal injury, or property damage to which this coverage applies, caused by an occurrence, and which arises from the ownership, maintenance, or use of the insured premises ..." (Mot. for Summ. J. Ex. 8 at 14 [19–9].) An occurrence is defined as "an accident, including exposure to conditions, which results in: a. bodily injury; b. property damage; or c. personal injury." (Mot. for Summ. J. Ex. 8 at 10 [19–9].) "Personal injury" is defined as "injury arising out of one or more of the following offenses: ... libel, slander, or defamation of character." (Mot. for Summ. J. Ex. 8 at 10 [19–9].) [9]

■ As noted, State Farm argues that none of the damages in this case arose from the ownership, maintenance, or use of an insured location. Weaver argues, however, that "defamation can be said to arise out of the **use** of the property if the property was the situs of the defamation." (Weaver's Resp. in Opp'n at 5.) Weaver submits an affidavit indicating that during 1999 to 2002, planning meetings were held at 3838 Walden Road. (Weaver Aff. ¶ 2.) He states that "[a]ny utterance or publica-

tion that formed the basis of the jury verdict against me occurred during these meetings as well as others." (*Id.*) He also states that the property "served as a forum for organizing, planning and publishing the comments" which gave rise to the jury verdict against him. (*Id.* ¶ 3.) State Farm argues that neither Erickson's complaint nor the trial transcript mention these meetings, and that even if Weaver's assertion about the situs of the meetings is true, "this does not constitute a sufficient connection with the Rental Dwelling Policy to trigger coverage." (Mem. in Supp. at 13.) According to State Farm, "[b]ecause the dwelling must demonstrate some causal connection to the injury beyond merely serving as the situs for the activity, State Farm is under no duty to defend or indemnify Weaver under the Walden Drive Rental Policy." (*Id.*)

In *Plaxco v. United States Fidelity & Guaranty Co.*, 252 S.C. 437, 166 S.E.2d 799 (1969), the court determined that the damages in that case did not arise out of the ownership, maintenance, or use of a vehicle. The court stated,

All the cases agree that a causal relation or connection must exist between an accident or injury and the ownership, maintenance, or use of a vehicle in order for the accident or injury to come within the meaning of the clause "arising out of the ownership, maintenance or use" of a vehicle, and where such causal connec-

---

8. This policy also contains a "rental premises liability" provision, which provides for coverage "[i]f a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage to which this coverage applies and which arises from the ownership, maintenance, or use of the insured location ..." (Mot. for Summ. J. Ex. 15 at 12 [19–16].) The "rental premises liability" provision is also subject to the "intentional acts" exclusion. The location of the premises insured under this policy is in Ladson, and there is no evidence that this loca-

tion had any relation to Erickson's claim against Weaver. Accordingly, there is no coverage under this portion of the policy.

9. Like the other policies, the rental dwelling policy provides that this coverage does not apply to bodily injury, personal injury, or property damage "(1) which is either expected or intended by an insured; or (2) to any person or property which is the result of willful and malicious acts of an insured." (Mot. for Summ. J. Ex. 8 at 14 [19–9].)

tion or relation is absent coverage will be denied.

*Plaxco,* 252 S.C. at 441, 166 S.E.2d at 800. The accident in *Plaxco* involved an insured using his automobile battery to jump start an airplane engine, and once the airplane engine was running, the airplane moved forward when the brakes failed to hold. *Id.* at 441, 166 S.E.2d at 801. The court noted that the power source was "coincidental," and "[t]he facts show that the accident resulted from the use of the airplane and not the insured automobile." *Id.* at 441, 166 S.E.2d at 801.

In *Wright v. North Area Taxi, Inc.,* 337 S.C. 419, 523 S.E.2d 472 (Ct.App.1999), the Court of Appeals of South Carolina addressed the issue of whether the trial court erred in holding that a "planned robbery and shooting of a taxi driver by two fare-paying passengers did not constitute the requisite 'causal connection' between 'use' of the vehicle and the damages inflicted" so as to trigger liability coverage. *Wright,* 337 S.C. at 422, 523 S.E.2d at 473–74. The court stated,

> [The plaintiffs] will be covered against loss from liability imposed by law for damages arising out of the ownership, maintenance, or use of the taxi only if a three-pronged test is satisfied. First, the parties seeking coverage must establish a causal connection between the vehicle and the injury. Second, no act of independent significance can occur that breaks the causal link. Third, the vehicle must have been used for transportation at the time of the accident.

*Id.* at 423–24, 523 S.E.2d at 474. The court described what is necessary to demonstrate a causal connection:

> A causal connection is established if it is shown that the vehicle was an "active accessory" to the assault. In *Aytes,* the court observed:
>
> The causation required is something less than proximate cause and something

more than the vehicle being the mere site of the injury. The injury must be foreseeably identifiable with the normal use of the vehicle. The required causal connection does not exist when the only connection between an injury and the insured vehicle's use is the fact that the injured person was an occupant of the vehicle when the shooting occurred.

*Id.* at 424, 523 S.E.2d at 474 (quoting *State Farm Fire & Cas. Co. v. Aytes,* 332 S.C. 30, 33, 503 S.E.2d 744, 745–46 (1998)). The court determined the taxi driver could not establish a causal connection because "the assault of the gunman broke any causal connection between the vehicle and ... [the] injury because it arose from an act of independent significance." *Id.* at 427, 523 S.E.2d at 476. The court concluded the injuries the driver received were "unrelated to any use of the vehicle," as "[t]he same injuries could have occurred when the vehicle was parked, or otherwise not moving, or when [the driver] or the gunmen were standing outside of the vehicle." *Id.* at 427, 523 S.E.2d at 476.

Both State Farm and Weaver concede that South Carolina has not interpreted the "arising out of" provision in the context of a rental dwelling policy. State Farm asserts, however, that the causal connection test that applies in the context of automobiles applies in the context of rental dwelling policies. (Mem. in Supp. at 12.) State Farm cites *Kramer v. State Farm Fire & Casualty Co.,* 76 Cal.App.4th 332, 90 Cal.Rptr.2d 301 (1999), for support. In that case, the California court stated that it must "decide whether, for purposes of insurance coverage, child molestation is an injury arising from the 'ownership, maintenance, or use' of the premises on which the molestation occurs." *Kramer,* 76 Cal.App.4th at 334, 90 Cal.Rptr.2d 301. The court concluded that, "absent a causal relationship between the use of the prem-

ises and the molestation, there is no coverage." *Id.* The court stated,

> We derive from these cases a general principle that injury, including injury from sexual conduct, does not arise from the "ownership, maintenance, or use" of a vehicle absent a showing that the use of the vehicle contributed in some way to the injury, beyond merely serving as the situs for the activity. Either the vehicle must have played a role in the physical mechanism which caused the injury ..., or the use of the vehicle must have been instrumental in placing the parties in a position for the injury to occur.

*Id.* at 338–39, 90 Cal.Rptr.2d 301.

Assuming that the test applicable in the automobile insurance policy is applicable in the context of a rental dwelling policy, there must first be a causal connection between the property and the injury. Although Erickson's Amended Complaint does not allege where the meetings at issue took place, such lack of allegations is not determinative, as there was no need for Erickson to allege where such meetings took place in order to recover. Given that there is evidence of meetings at the insured property, the court finds that Weaver has presented sufficient evidence of a causal connection. Weaver presented evidence that the insured premises was not only a location of defamation (in that the members of the Domestic Court Reform Movement published the defamatory statements amongst themselves), but it served as a meeting spot where the group planned its activities. Thus there is evidence in the record of a causal connection between the property and the injury.

An exclusion governs the result of this case, however, as the policy also contains an "intentional acts" exclusion. For the same reasons the court determined the "intentional acts" exclusion results in no coverage under the Homeowner's Policy,

the court determines the exclusion applies here and that State Farm has no duty to indemnify Weaver under the Rental Dwelling Policy.

### *CONCLUSION*

It is therefore **ORDERED,** for the foregoing reasons, that State Farm's Motion for Summary Judgment is **GRANTED.**

**AND IT IS SO ORDERED.**